**McMONAGLE, PERRI, and McHUGH, P.C.**
**BY:  FORTUNATO N. PERRI, ESQUIRE**
**SUITE 701**
**ONE PENN SQUARE WEST**
**30 S0UTH 15TH STREET**
**PHILADELPHIA, PA  19102**
**(215) 981-0999**

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 06-126 |
| | : | |
| | : | |
| vs. | : | |
| | : | |
| WILLIAM HERNANDEZ | : | |

**DEFENDANT WILLIAM HERNANDEZ'S**
**MEMORANDUM OF LAW IN OPPOSITION**
**TO THE GOVERNMENT'S MOTION FOR**
**ADMISSION OF EVIDENCE**

TO THE HONORABLE, THE JUDGES OF THE SAID COURT:

Defendant, William Hernandez, by his attorney, Fortunato N. Perri, Esquire presents the following in support of his objection to the government's request that it be permitted to introduce certain evidence at trial against him.  It is the defendant's position that said evidence is inadmissible because it fails to meet the requirements of F.R.E. 404(b) for introduction, is not relevant, and/or the probative worth of the evidence is outweighed by the prejudice it would engender if presented to the jury.

**DISCUSSION**

On December 26, 2005, at least four men entered a home in Erial, New Jersey and subdued the residents therein.  The men then ransacked the home and took jewelry, cellular telephones, and other items, including a safe.  After the males left the residence,

the occupants of the home called police and described the assailants to the police. Subsequent thereto, police observed a sport utility vehicle with four men inside it that fit the description of a vehicle allegedly used by the home invaders. When an attempt was made to stop the vehicle by the toll booths of the Walt Whitman Bridge, the driver refused to stop and drove into Philadelphia where Philadelphia Police began pursuing it. The chase ended when the vehicle crashed. When it did so, its four occupants fled. Three of them, William Brown, Lawrence Johnson, and Rasheen Mines were apprehended within a short time. The fourth man was not apprehended.

The Police recovered various items from the SUV and in the immediate vicinity of it, including two cellular telephones, a bank card in the name of William Moreno an alias used by the defendant, and a dry cleaning receipt with a last name of Moreno on it. The authorities also recorded various conversations made from prison by the above-named individuals and recorded the numbers they called. In addition, the authorities compared telephone numbers stored in the two cell phones found near the SUV with numbers called by defendants Johnson and Brown, while in custody. That comparison revealed that many of the numbers in the two cell phones matched numbers called by Johnson and Brown. One of the numbers Brown called also was called by defendant Mines.

With respect to defendant Hernandez, the government first seeks permission to introduce telephone records pertaining to a cellular telephone belonging to defendant Hernandez. According to those records, between December 18, 2005, and December 26,

2005, there were 236 communications[1] between Mr. Hernandez's cell phone and either of the two cell phones recovered by police. Eighteen of those occurred on December 26, 2005, the day of the robbery.

The government also seeks to introduce the cellular records of a telephone registered to a Fernando Garcia. Those records indicate that there were numerous communications made between Garcia's phone and Hernandez's phone and between Garcia's phone and one of the phones found by police near the SUV, in the weeks prior to the date of the robbery and on the day of the robbery as well as during the period of time the crime was being committed. Those records further revealed that when calls were made from Garcia's phone when the crime was being committed, Garcia's phone was in the same proximity as the defendant's phone and the two phones found near the SUV.

The government further asks that it be permitted to introduce various records of telephone calls made following the crash of the SUV between the defendant's cell phone and cell phones registered to his brother, Domingo Hernandez, and his sister, Wanda Moreno as well as calls made from a cell phone registered to the defendant's girlfriend which corroborate records pertaining to the defendant's telephone that showed that both telephones were taken to the Southwestern United States and then back to Philadelphia between December 26, 2005, and January 5, 2006.

Finally, the government requests that it be allowed to introduce evidence indicating that the defendant was on parole at the time the crime was committed and that he refused to provide a saliva sample for a DNA comparison.

---

[1] The government has described a communication as an "attempted or completed telephone call, or an attempted to completed communication" using Nextel's "walkie-talkie" feature. Government's memorandum, p. 5.

### A. THE TELEPHONE RECORD SHOULD NOT BE DEEMED ADMISSIBLE.

It is the theory of the government that the telephone records referred to above are admissible and that FRE 404(b) does not preclude their introduction because such records evidence a connection between the defendants and others and thus, are relevant to prove identity. It is the government's theory that this evidence "demonstrates such preexisting relationships among the defendants [and] therefore [is] intrinsic to the charges. . . ." Government's memorandum, p. 13. In support of its theory of admissibility, the government argues that Rule 404(b) does not apply to evidence that is 'intrinsic' to the charged offense." United States v. Cross, 308 F.3d 308, 320 (3rd Cir. 2002). It also provided caselaw from other circuits that it claims applies to the instant matter. The government, however, has conveniently failed to note that the Third Circuit has not adopted as an expansive view of what constitutes "intrinsic" evidence under Rule 404(b) as other Circuit Courts have.

In several circuits, evidence is intrinsic if the evidence and the evidence related to the crime is "inextricably intertwined" or the evidence relates to acts which were 'necessary preliminaries' to the crimes charged. See Government's memorandum, p. 14. The Third Circuit, however, has indicated that "acts are intrinsic when they directly prove the charged conspiracy." United States v. Cross, 308 F.3d at 320. See also United States v. Gibbs, 190 F.3d 188, 217, 18 (3d Cir. 1999); United States v. Gilliard, 2005 U.S. Dist. Lexis 10214 (E.D. Pa. 2005); United States v. Barnes, 2005 U.S. Dist. Lexis 17151 (E.D. Pa. 2005).

In Barnes, the Honorable John R. Padova, citing Cross, ruled that evidence pertaining to other drug activity engaged in by defendant Barnes was not admissible as

4

intrinsic evidence under Rule 404(b).  The Court discussing the Cross, supra, decision, stated:

> The Government first argues that evidence on Defendant's uncharged narcotics activities is admissible because it provides a complete picture of the chain of events leading up to the charged conduct and, therefore, establishes Defendant's intent and motive with respect to the charges brought against him.  Rule 404(b) 'does not extend to evidence of acts which are 'intrinsic' to the charged offense.'"  United States v. Cross, 308 F.3d 308, 320 (3d Cir. 2002) (quoting Fed. R. Evid. 404(b) Advisory Committee's Note).  The United States Court of Appeals for the Third Circuit ("Third Circuit") has held that, although "most circuit courts view evidence as intrinsic if it is 'inextricably intertwined' with the charged offense. . . or if it 'completes the story' of the charged offense," in this Circuit acts are intrinsic only "when they directly prove the charged [offense]."  Id. Here, the Government does not argue that evidence of the uncharged drug activities directly proves the charged offenses.  Rather, the Government merely contends that such evidence would provide a complete picture of Defendant's activities in the days leading up to February 9, 2005.  The Court independently finds that Defendant's prior uncharged drug activities are not direct proof of Defendant's intent with respect to the controlled substances and drug paraphernalia.

The Court then wrote:

> With respect to Defendant's prior uncharged drug trafficking activities, the Government argues that this evidence is relevant to Defendant's knowledge and intent with respect to Counts I and II of the Indictment, which charge Defendant with possession of a controlled substance and possession of a controlled substance with intent to distribute, respectively.  However, prior bad acts [are not] intrinsically relevant to 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake.'"  Sampson, 980 F.2d at 888.  The Government, therefore, cannot establish the relevancy and admissibility of Rule 404(b) evidence by simply reciting "the litany of 'knowledge, intent,

5

>absence of mistake, etc.' without explaining how that evidence relates to the recited purpose." Id. Here, the Government has not articulated any logical chain of inferences consistent with its case which explains how the proposed evidence is relevant to establish Defendant's knowledge and intent with respect to Counts I and II of the Indictment.  See Himelwright, 42 F.3d at 782.  "Where the government has not clearly articulated reasons why the evidence is relevant to any legitimate purpose, there is no realistic basis to believe that the jury will cull the proper inferences and material facts from the evidence." Sampson, 980 F.2d at 889.  Accordingly, the Court concludes that evidence of Defendant's uncharged drug activities is not admissible under Rule 404(b) for purposes of proving Defendant's knowledge and intent with respect to Counts I and II of the Indictment.

Instantly, the government as noted above, argues, inter alia the evidence in question tends to prove a pre-existing relationship amongst the defendants which, it asserts, corroborates other evidence that identifies the defendants as the perpetrators of the crime.  The government, however, has failed to articulate how the telephone communications prove either the existence of a conspiracy amongst the defendants or the identity of the perpetrators of the crime.  While there were numerous communications made prior to and subsequent to the commission of the crime using the identified cell phones, no evidence exists showing who participated in those conversations or what they concerned.  Absent such evidence, the communications simply do not establish the existence of a conspiracy, or any other crime, as required by Cross, supra, or the identity of the perpetrators and therefore, they are inadmissible under Cross.  As the Court is well aware, mere association amongst various individuals standing alone, is insufficient to establish a conspiracy.  United States v. Gibbs, 739 F.2d 838 (3d Cir. 1984; United States v. Ammar, 714 F.2d 238 (3d Cir. 1983) since the communications establish, at most, mere association, it is clear that Rule 404(b) prohibits their introduction.

It is further noted that in order to introduce evidence of other acts or crimes under Rule 404(b) to prove identity, the government must establish that the crime charged and the previous acts were committed in a particularly similar fashion such that the methods used to commit the crimes constitute a signature.  United States v. Guerrero, 169 F.3d 933 (5th Cir. 1999).  Here, the evidence in question surely does not fit this standard and should be excluded for this reason as well.

The government further claims, without explanation, that the communications evidence is admissible to complete the story of the crime.  government's memorandum, p. 15.  Defendant first submits that the story of the crime herein was complete when the van crashed.  In addition, absent evidence setting forth who made the communication using the defendant's cell phone and the contents of those communications, the communications simply do not complete the story of the crime whatever that may be.

Finally, if the Court should find that Rule 404(b) does not apply and the communications are admissible, defendant submits that the Court should exclude the communications because they are not relevant and thus, under FRE 402, they should be excluded as evidence.  This is the case because there is no evidence that indicates that any of the communications were made to facilitate the crimes herein.  The lack of evidence showing the purpose for which the communications were made requires that they be excluded because of the lack of a nexis between the crimes and the communications.

In addition, the evidence should be deemed inadmissible pursuant to FRE 403 because there is a significant chance that its introduction well unfairly prejudice, confuse, and mislead the jury.  Regarding the defendant, Mr. Hernandez, there is no evidence

7

showing that he himself made any of the communications or what those communications concerned. However, given that the defendant's cell phone was used to make many of the communications and given that his cell phone contained telephone numbers that were stored in the phones referred to by the government and which were utilized by his alleged co-defendants, there is a significant risk that the jury will conclude from that evidence that the defendant was a participant in the crime. Due to the lack of evidence showing the contents of those communications and the context in which they were made, as well as who made them, the defendant should not be subject to the possible prejudicial effect the introduction of the disputed evidence will surely engender.

In its memorandum, the government further asserts that the communications should be ruled admissible only to demonstrate the preexisting relationship among the defendants, and thus will corroborate the reliability of the government's other evidence." Government's memorandum, p. 20. Defendant submits that it is for this specific reason that the communications evidence should be excluded because of the great risk that the jury may conclude that the defendant was a participant in the crime due solely to these alleged preexisting relationships. If the government had evidence demonstrating what was said during the communications or evidence indicating that they concerned the crimes charged, there would be no argument that the communications would be admissible. Absent such evidence, however, the risk that the jury will misuse the evidence is simply too great to permit its introduction.

      B.    THE RECORDS PERTAINING TO THE DEFENDANT'S CELL PHONE AND GARCIA'S CELL PHONE SHOULD BE EXCLUDED.

The government argues that the above phone records are admissible for the same reasons the evidence just discussed is admissible. It is submitted that they are not for the same reasons defendant proffered in the previous section herein. First, since the government has not presented any evidence connecting the referred to communications to a conspiracy or other crimes, the evidence does not constitute "intrinsic" evidence excluded from F.R.E. 404. Thus, that Rule applies to it.

In addition, the test utilized to determine whether evidence is admissible under F.R.E. 404 requires a court to determine whether the evidence is relevant and not unduly prejudicial, see United States v. Huddleston, 108 S.Ct. 1496 (1988). Here, it is clear that the evidence cannot meet these standards. First, the evidence surely is irrelevant because of the lack of proof of a connection between the evidence and the crime. It is submitted that the government should, at a minimum, produce some evidence that the communications in question pertained to the crimes herein before they are deemed admissible. Merely showing that there were communications made amongst the various phones without showing who participated in the communications and what was discussed therein, defendant submits, is not sufficient to establish the relevancy of the communications.

Relatedly, because of the lack of evidence demonstrating who participated in the communications and the contents of them, defendant surely would be prejudiced by the introduction of the evidence. As stated in the previous section, the jury may well conclude that the defendant is guilty merely on account of his apparent association with the others accused of committing the crime. The fact that such a result is likely, the evidence surely should be excluded.

The government further argues that phone records showing that the defendant left the area following the commission of the crime are admissible to show consciousness of guilt. Defendant simply would argue that since he had not been charged with any crime at the time he left the area, such evidence should be deemed inadmissible. contra. United States v. Pungitore, 910 F.2d 1084, 1151 (3d Cir. 1990).

### C. THE FACT THAT DEFENDANT WAS ON PAROLE IS CLEARLY INADMISSIBLE

Defendant submits that the government's request that it be permitted to inform the jury that he was on parole should be denied as the probative value of such evidence is clearly outweighed by the prejudice it will surely engender in the jury. With respect to F.R.E. 403, a court is obliged "to appraise the genuine need for the challenged evidence and balance that necessity against the risk that the information will influence the jury to convict on improper grounds." United States v. Scarfo, 850 F.2d 1015, 1019 (3d Cir. 1988).

Instantly, it is submitted that there is a substantial risk that the jury will conclude from the fact that the defendant is on parole and thus, has a criminal record, that he is guilty of participating in the crime herein. For this reason alone, such evidence should be excluded.

Apart from the foregoing, the government has not presented any evidence that indicates that it has a genuine need for such evidence. While it argues that the evidence that the defendant was on parole is relevant to prove identity, and thus admissible under F.R.E. 404(b), the government failed to include in its memorandum any discussion how such evidence identifies the defendant as a participant in the crimes herein. As noted

10

previously herein, prior crime evidence to prove identity must be like a signature to be admissible. This clearly is not the case here. See United States v. Sampson, 980 F.2d 883, 889 (3d Cir. 1992) (where government has failed to articulate reasons why evidence is relevant, no basis to believe that the jury will draw appropriate inferences from it.) Moreover, merely because communications were made amongst various telephones, one of which belonged to the defendant, does not, without more, inculpate him in the crime.

Moreover, permitting the government to introduce evidence indicating that the defendant was on parole would permit the jury to engage in speculation concerning the crime or crimes defendant was convicted of committing to be placed on parole. It would also place the defendant in the uneviable position of deciding whether to allow the jury to speculate about that crime or to inform it of the crime underlying his parole. Defendant should not be placed in such a position.

The government has referred in its memorandum to the case of United States v. Cruz, 326 F.3d 392 (3d Cir. 2) as supporting its contention that evidence of the defendant's parole status is admissible. In Cruz, unlike here, such evidence served a legitimate evidentiary purpose. It demonstrated why Cruz concealed his drug activity, namely, to avoid having his parole revoked. Here, though, the government has failed to articulate any reason why the evidence should be deemed admissible. Merely stating that it proves identity does not suffice without some argument as to how and why the defendant's parole status proves identity.

Finally, the government can prove that the telephone number in question is registered to the defendant's telephone without informing the jury that the defendant was on parole when the crime was committed either through phone records or by having the

parole officer testify without having him identify himself as such. Simply put, advising the jury that the defendant was on parole is unnecessary and risks unduly prejudicing the jury.

        D.      <u>EVIDENCE THAT THE DEFENDANT REFUSED TO SUBMIT A SALIVA SAMPLE FOR DNA TESTING SHOULD BE EXCLUDED</u>

Defendant submits that evidence of his initial refusal to submit a saliva sample should be excluded because he had a legitimate reason for doing so. At the time he was first asked to submit the sample, he had just retained or was about to retain present counsel and he wanted to consult with counsel before providing the sample. The defendant's exercise of his right to consult with counsel should not now be permitted to be used by the government as proof of his guilt. This is especially the case since after consulting with counsel, the defendant willingly did submit the requested sample.

Accordingly, this evidence should be excluded.

13

**CONCLUSION**

       For all of the foregoing reasons, the government's motion should be denied.

       Respectfully submitted,

       s/ FORTUNATO N. PERRI, JR.
       Fortunato N. Perri, Jr.Esquire
       Attorney for William Hernandez

# **PROOF OF SERVICE**

Fortunato N. Perri, Esquire, hereby avers that he served the attached memorandum on the individuals listed below by first-class mail on the 23 day of June, 2006.

        Lisa Evans Lewis, Esquire
        Federal Public Defender
        800 Cooper Street, Suite 350
        Camden, New Jersey 08102

        Jerrold Colton, Esquire
        1103 Laurel Oak Road
        Voorhees, New Jersey 08043

        Steven D'Aguanno, Esquire
        Assistant United States Attorney
        United States Attorney's Office
        District of  New Jersey
        401 Market Street, 4th Floor
        Camden, NJ  08606


        Michael E. Riley, Esquire
        Washington House
        100 High Street, Suite 103
        Mount Holly, New Jersey 08060